UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY DOCHERTY and KRISTI
WALTSGOTT, Personal Representatives of the
Estate of Kent Morton,

     Plaintiffs,

v.

DETROIT INTERNATIONAL BRIDGE COMPANY,
SEA WAY PAINTING COMPANY, INC., a/k/a
SEA WAY PAINTING, L.L.C.,

     Defendants.

U.S.D.C. #
Hon.

Lower Case No. 12-004317-NO
Wayne County Circuit Court
Hon. Daphne Means Curtis

---

## NOTICE OF FILING REMOVAL

## NOTICE OF REMOVAL TO FEDERAL COURT

## VERIFICATION

## CERTIFICATE OF SERVICE

Respectfully submitted,

/s/Jerome A. Galante
Jerome A. Galante (P32406)
Plunkett Cooney
*Attorneys for Detroit International Bridge Company*
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI  48304
(248) 594-8209
jgalante@plunkettcooney.com

Dated:  May 17, 2012

STATE OF MICHIGAN
WAYNE COUNTY CIRCUIT COURT

KIMBERLY DOCHERTY and KRISTI
WALTSGOTT, Personal Representatives of the
Estate of Kent Morton,

Case No. 12-004317-NO
Hon. Daphne Means Curtis

     Plaintiffs,

U.S.D.C. Case No. _____

v.

DETROIT INTERNATIONAL BRIDGE COMPANY,
SEA WAY PAINTING COMPANY, INC., a/k/a
SEA WAY PAINTING, L.L.C.,

     Defendant.

---

| | |
|---|---|
| Geoffrey N. Fieger (P30441)<br>Jeffrey A. Danzig (P65351)<br>James J. Harrington (P65351)<br>Attorneys for Plaintiffs<br>19390 W. 10 Mile Rd.<br>Southfield, MI 48075<br>248/355-5555 | Jerome A. Galante (P32406)<br>Plunkett Cooney<br>Attorneys for Detroit International Bridge Co.<br>Plunkett Cooney<br>38505 Woodward Ave., Suite 2000<br>Bloomfield Hills, MI 48302<br>248/594-8233 |

---

## NOTICE OF FILING REMOVAL

TO:
Geoffrey N. Fieger (P30441)           Clerk of the Court
Jeffrey A. Danzig (P65351)             Wayne County Circuit Court
James J. Harrington (P65351)          2 Woodward Ave.
Attorneys for Plaintiffs                 Detroit, MI 48226
19390 W. 10 Mile Rd.
Southfield, MI  48075

      PLEASE TAKE NOTICE THAT Defendant, Detroit International Bridge Company,

have this day, filed a Notice of Removal, a copy of which is attached hereto, in the offices of the

Clerk of the United States District Court, Eastern District of Michigan, Southern Division.

                   Respectfully submitted,

                   */s/Jerome A. Galante*
                   Jerome A. Galante (P32406)
                   Plunkett Cooney
                   *Attorneys for Detroit International Bridge Company*
                   38505 Woodward Avenue, Suite 2000
                   Bloomfield Hills, MI  48304
                   (248) 594-8209
                   jgalante@plunkettcooney.com

Dated:  May 17, 2012

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY DOCHERTY and KRISTI
WALTSGOTT, Personal Representatives of the
Estate of Kent Morton,

      U.S.D.C. #
      Hon.

     Plaintiffs,

      Lower Case No. 12-004317-NO
v.                         Wayne County Circuit Court
      Hon. Daphne Means Curtis

DETROIT INTERNATIONAL BRIDGE COMPANY,
SEA WAY PAINTING COMPANY, INC., a/k/a
SEA WAY PAINTING, L.L.C.,

     Defendant.

---

## NOTICE OF REMOVAL TO FEDERAL COURT

TO:   Clerk of the Court
       Wayne County Circuit Court
       Counsel of Record

     Defendant, Detroit International Bridge Company ("DIBC"), pursuant to 28 U.S.C. §1446, 28 U.S.C. §1331 and 28 U.S.C. §1441, *et seq.*, hereby submits this Notice of Removal from the Wayne County Circuit Court to the United States District Court for the Eastern District of Michigan, the judicial district in which this action is pending.

     In support of this Notice of Removal, the DIBC states:

     1.    On March 28, 2012, this action was filed by Kimberly Docherty and Kristi Waltsgott, as co-personal representatives of the Estate of Kent Morton, deceased, against DIBC and Seaway Painting Company, Inc., a/k/a Seaway Painting, L.L.C. as Defendants in the Wayne County Circuit Court, bearing Civil Docket No. 12-004317-NO.  A copy of the Complaint is attached as **Exhibit A**.

     1.    On March 28, 2012, this action was filed by Kimberly Docherty and Kristi Waltsgott, as co-personal representatives of the Estate of Kent Morton, deceased, against DIBC and Seaway Painting Company, Inc., a/k/a Seaway Painting, L.L.C. as Defendants in the Wayne

County Circuit Court., bearing Civil Docket No. 12-004317-NO.  A copy of the Complaint is attached as **Exhibit A**.

2.      Defendant DIBC was served with a Summons and Complaint on April 4, 2012 but Seaway was not served until April 18, 2012.

3.      Plaintiffs' Complaint alleged negligence/common work area liability against DIBC, and also alleges intentional tort theories against the decedent's employer, Seaway Painting Company, Inc., arising out of a construction project which included re-decking and resurfacing of the roadway to the Ambassador Bridge.

4.      Said action is a suit at common law of a civil nature and the amount claimed, exclusive of interest and costs, is more than the sum of $75,000.

5.      Plaintiffs' Complaint alleges that on or about January 11, 2012, the decedent, Kent Morton, while working underneath the Ambassador Bridge, was moving the "safe span" decking which gave way, causing the decedent to fall into the Detroit River where he died.

6.      This Court has jurisdiction over the Complaint pursuant to 28 U.S.C. §1331.

7.      Federal question jurisdiction under 28 U.S.C. §1331 exists both for federal causes of action and for "state law claims that implicate significant federal issues." *Grable & Sons Metal Prods v. Darue Engineering*, 545 U.S. 308, 313; 125 S. Ct. 2363, 2367; 162 L. Ed. 2d 257 (2005).

8.      The Ambassador Bridge connects federal highways I-75, I-96 and indirectly I-94 from the United States to Canadian Highway 401 and indirectly to Highway 402, the major commercial arteries in Ontario.

9.      The Ambassador Bridge is an integral part of the federal highway system that facilitates international and interstate traffic.

10.     In 1930, the Michigan Supreme Court found that "[t]he **bridge** and its approaches form one structure.  As such, it constitutes a union of highways of Michigan and Ontario and converts them into one interrupted public road." *Detroit International Bridge Co. v. American Seed Co,* 249 Mich. 289,295; 228 N.W. 791, 793 (1930)(emphasis in original).

11.     That "one interrupted public road" across the international border over the Detroit River is solely to carry international traffic.

12.     Plaintiff was working for a company maintaining and improving the Ambassador Bridge to continue to facilitate international and interstate traffic.

13.     The Michigan Supreme Court found that "Congress has required the DIBC to build operate, and maintain the bridge." *City of Detroit v. Ambassador Bridge Co.,* 481 Mich. 29, 47-48; 748 N.W.2d 221 (2008).

14.     Once one enters upon the Ambassador Bridge, one has passed the point of no return and the traveller must pass through customs to gain entry to the United States' control of the activities in the federal sterile zone preceding the point of no return, and the grant of entry into the United States is exclusively by the federal government.

15.     Plaintiffs' entire Complaint arises from death and alleged injuries sustained by Plaintiffs' decedent as an alleged result of the decedent's work on a DIBC construction project on the Ambassador Bridge beyond the point of no return. See, Complaint at ¶ 5.

16.     DIBC's interaction with the federal government is for the facilitation of interstate and foreign commerce, which it is required to do by Congress, and DIBC's maintenance and operation of the Ambassador Bridge furthers that purpose because "there is a strong and substantial level of Federal control and involvement with the DIBC within the Bridge Complex."

17.     Kent Morton was allegedly injured and died while allegedly performing work on a DIBC construction project to better facilitate international and interstate traffic.

3

18.     Defendant DIBC has filed no pleadings in the Circuit Court for the County of Wayne, no proceedings in said cause have taken place to date, and this Notice of Removal is timely filed within 30 days after the date of service of process upon Defendant.

19.     Defendant DIBC was served on April 4, 2012 but defendant Seaway was served on April 18, 2012.  This case, therefore, remains fully removable pursuant to the statutes above cited for the within reasons.

20.     Attached hereto and made a part hereof is a copy of the Complaint setting forth the claim for relief upon which the action is based by Plaintiffs against Defendant DIBC. (**Exhibit A**).  The time for filing of this Removal under the statutes of the United States has not expired and is herewith made timely.

21.     The written Notice of the filing of this Removal has been given to all parties as required by law, and is attached hereto.

22.     That a true and correct copy of this Removal has been filed with the Clerk of the Court for the Circuit Court for the County of Wayne, State of Michigan, as provided for by law.

23.     That there is filed herewith and incorporated as part hereof, a true and correct copy of all process and pleadings which have been served upon this Defendant in this action.

WHEREFORE, Defendant, Detroit International Bridge Company, request that this action proceed in this Court as a removal action under 28 U.S.C. §§ 1441 and 1446.

Respectfully submitted,

/s/Jerome A. Galante
Jerome A. Galante (P32406)
Plunkett Cooney
*Attorneys for Detroit International Bridge Company*
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI  48304
(248) 594-8209
jgalante@plunkettcooney.com

Dated:  May 17, 2012

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY DOCHERTY and KRISTI
WALTSGOTT, Personal Representatives of the
Estate of Kent Morton,

     Plaintiffs,

v.

DETROIT INTERNATIONAL BRIDGE COMPANY,
SEA WAY PAINTING COMPANY, INC., a/k/a
SEA WAY PAINTING, L.L.C.,

     Defendants.

U.S.D.C. #
Hon.

Lower Case No. 12-004317-NO
Wayne County Circuit Court
Hon. Daphne Means Curtis

_____

**VERIFICATION**

Jerome A. Galante, first being duly sworn, states that he is the attorney for Defendant, Detroit International Bridge Company and that the foregoing Notice of Removal is true in substance and in fact to the best of his knowledge, information and belief.

Respectfully submitted,

/s/Jerome A. Galante
Jerome A. Galante (P32406)
Plunkett Cooney
Attorneys for Detroit International Bridge Company
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304
(248) 594-8209
jgalante@plunkettcooney.com

Dated: May 17, 2012

Subscribed and sworn to before me
on May 17, 2012.
/s/Kathryn Rzeppa
Notary Public
Oakland County, Michigan
My Commission Expires: 1/29/19

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY DOCHERTY and KRISTI
WALTSGOTT, Personal Representatives of the
Estate of Kent Morton,

       U.S.D.C. #
       Hon.

      Plaintiffs,

       Lower Case No. 12-004317-NO

v.

       Wayne County Circuit Court
       Hon. Daphne Means Curtis

DETROIT INTERNATIONAL BRIDGE COMPANY,
SEA WAY PAINTING COMPANY, INC., a/k/a
SEA WAY PAINTING, L.L.C.,

      Defendants.

---

## CERTIFICATE OF SERVICE

      I hereby certify that on May 17, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system and  that I have mailed by United States Postal Service to any parties that are not ECF participants.

                Respectfully submitted,

                */s/Jerome A. Galante*_____
                Jerome A. Galante (P32406)
                Plunkett Cooney
                *Attorneys for Detroit International Bridge Company*
                38505 Woodward Avenue, Suite 2000
                Bloomfield Hills, MI  48304
                (248) 594-8209
                jgalante@plunkettcooney.com

Dated:  May 17, 2012

Open.05044.21318.11865472-1

**EXHIBIT A**

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**KIMBERLY DOCHERTY and KRISTI WALTSGOTT,**
**as Co-Personal Representatives of the Estate of**
**KENT MORTON, deceased,**

**Plaintiff,**

-v-

DOCHERTY, KIMBERLY , et al. v DET
Hon. Daphne Means Curtis          03/28/2012

**12-004317-NO**

**DETROIT INTERNATIONAL BRIDGE COMPANY,**
**A Michigan Corporation,**
**SEA WAY PAINTING COMPANY, INC.,**
**A Michigan Corporation, aka**
**SEA WAY PAINTING, L.L.C.**
**A Michigan Limited Liability Company.**

**Defendants.**

_____/

GEOFFREY N. FIEGER (P30441)
JEFFREY A. DANZIG (P36571)
JAMES J. HARRINGTON, IV (P65351)
Attorney for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555

_____/

## COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action not between these parties arising out of the same transaction or occurrence as alleged in this complaint that is either pending, or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

NOW COME Plaintiffs, KIMBERLY DOCHERTY and KRISTI WALTSGOTT,

as Co-Personal Representatives of the Estate of KENT MORTON, deceased, by and

through their attorneys, Fieger, Fieger, Kenney, Giroux & Danzig, P.C., and for their

Complaint against the above-named Defendants, states as follows:

1.     KIMBERLY DOCHERTY and KRISTI WALTSGOTT, were appointed co-personal representatives of the estate of KENT MORTON, deceased on March 21, 2012 by the Wayne County Probate Court who brings this cause of action pursuant to and in accordance with the Michigan Wrongful Death act, MCL 600.2922.

2.     At all times relevant KIMBERLY DOCHERTY and KRISTI WALTSGOTT were and are residents of Wayne County, Michigan.

3.     DETROIT INTERNATIONAL BRIDGE COMPANY, (Hereinafter "DIBC") is a Michigan Corporation existing under the laws of the State of Michigan with its principal place of business in Wayne County, Michigan and/ or its registered office at 12225 Stephens Road, Warren, MI 48089 and 1881 First National Building, Detroit, MI.

4.     SEA WAY PAINTING COMPANY, INC., and SEA WAY PAINTING, L.L.C. (Hereinafter "SEA WAY") is a Michigan Corporation/ Michigan Limited Liability Company existing under the laws of the State of Michigan with its principal place of business in Wayne County, Michigan with its registered office at 31801 Schoolcraft Rd., Livonia, MI.

5.     This lawsuit arises out of a tragic and deadly incident occurring on January 11, 2012 at the Ambassador Bridge located in Detroit, MI. Kent Morton, while working underneath the Ambassador Bridge on an unsafe, improperly installed, improperly maintained decking/ scaffolding which was known by all defendants to be defective and dangerous, which caused him to fall to his untimely death into the freezing cold waters of the Detroit River. Also, all defendants were required to provide multiple safety devices to all workers, including a harness, to workers working underneath the Ambassador Bridge, as well as provided an operating rescue boat with a driver below, life jackets, a buoy and rope. None of these safeguards were in place at the time of the fall.

2

6.      At all times material and relevant, the incredibly unsafe working conditions such as the wrongfully installed decking, and the failure to provide the above described safety precautions and devices, were absent from the work site and had been for the entire time of the project on the Ambassador Bridge.

7.      These dangerous conditions were known to all defendants.  All defendants had an opportunity and a duty to prevent this tragic event and failed to do so.

8.      KENT MORTON's deceased body was found on Saturday March 24, 2012 in the Detroit River near Zug Island.

9.      The amount in controversy greatly exceeds $25,000.00, exclusive of costs, interest and attorney fees.  Venue and jurisdiction are properly vested with this court.

## FACTUAL ALLEGATIONS

10.     Plaintiff hereby restates and realleges each and every allegation contained within paragraphs 1-9 as if fully set forth herein.

11.     At all times relevant to this lawsuit, Plaintiff's Decedent Kent Morton was working for SEA WAY.

12.     At all times relevant, DIBC owned, operated, and controlled the Ambassador Bridge.

13.     At all times relevant, DIBC was the possessor of the Ambassador Bridge, and or retained control over all aspects of all work being performed on the bridge.

14.     At all times relevant, DIBC subcontracted with SEA WAY for a project to perform work on the Ambassador Bridge.

15.     At all times relevant, DIBC subcontracted with multiple other contractors in addition to SEA WAY who were performing work in the same area from which Plaintiff, KENT MORTON fell on January 11, 2012.

3

16.     At all times relevant, DIBC was the general contractor of the project for which SEA WAY, as well as for multiple other contractors, were performing work at the Ambassador Bridge on or around January 11, 2012.

17.     At the time of Mr. Morton's fall he was working on the underside of the Ambassador Bridge.

18.     At all times relevant, Mr. Morton was doing work while in the course of his employment at the time of the fall.

19.     Upon all information and belief, when Mr. Morton reported to work on January 11, 2012, no one provided him with any type of safety harness.

20.     Upon all information and belief, Mr. Morton was instructed to work in the area in which he fell and was never instructed to wear any safety equipment which would have prevented the fall.

21.     Upon all information and belief, Mr. Morton was specifically directed to perform work without a safety harness or other device to prevent his fall.

22.     At all times relevant all defendants knew that the work being performed by Kent Morton and other similarly situated workers was extremely dangerous and working without the known safeguards made injury certain to occur.

23.     At all times material and relevant, employees, agents and/or supervisors working for Defendant, DIBC were in control of significant aspects of the work being performed by the employees including Mr. Morton as well as other contractors.

24.     At all times material and relevant, a common work area was created by the general contractor Defendant, DIBC.

25.     At all times material and relevant, Defendant SEA WAY and Defendant DIBC, pursuant to Michigan statute, were responsible for job safety for all employees

4

and/or agents working at various job sites under their control.

26. At all times material and relevant, Defendants, SEA WAY and/ or DIBC were required to provide and maintain proper safety equipment and practices so as to avoid incidents and injuries such as those involving Mr. Morton.

27. At all times relevant the SEAWAY managers and supervisors allowed the employees to work on, near, and under the Ambassador Bridge or in the general vicinity where there was no safety/ rescue boat available underneath the bridge, no life vests/ jackets were provided, no buoys were provided and no safety harnesses were provided to the workers even though conducting business without those safety devices would make injury certain to occur.

28. Upon all information and belief prior to the death of Mr. Morton, many complaints were made to SEA WAY via its management and co-employees about the dangerous working conditions created by failing to provide the safety precautions described above as well as the improperly installed decking/ scaffolding.

29. At all times relevant, SEA WAY installed the decking and/ or scaffolding.

30. The decking and scaffolding was installed in such a deficient manner it made injury certain to occur.

31. SEA WAY had significant warning that an injury, and potentially death, could and would occur, and was certain to occur if the safety precautions were not put into place.

32. Contrary to industry standards as well as common sense, no rescue boat was provided or available, no buoy, life vests/ jackets, safety harness were provided as well. At all times prior to the death of Mr. Morton, SEA WAY knew that these absent but required safety features should have been available, and to conduct business underneath the

5

Ambassador Bridge without them rendered this project a tremendously dangerous project where injury would be certain to occur.

33.    In addition, Defendant SEA WAY neglected to have properly trained and certified workers familiar with or otherwise complying with safety requirements thereby enhancing the threat of certain serious injury to one or more of its workers as a result of the defective conditions and defective employment circumstances.

34.    Upon all information and belief prior to the subject incident, SEA WAY had multiple inspections performed by MIOSHA resulting in violations against it issued by MIOSHA from some if not all of the inspections, which identified multiple defects and hazardous conditions including warnings and violations relating to use of unguarded take up pulley/ conveyors and/or persons working with and around the take up pulley/ conveyors.

35.    As a result of the prior violations and warnings as well as the prior occurrences and complaints involving other workers, Mr. Morton's supervisors and managers knew that injury to either Mr. Morton or another worker was "certain to occur" as contemplated under MCL 418.131(1).

36.    At all times material and relevant, SEA WAY through its supervisors and management personnel, subjected Mr. Morton and other  employees to a continuously hazardous condition arising from the dangerous conditions as previously described herein, through its management personnel, knew or should have known the condition would cause injury or even death.

37.    At all times material and relevant, SEA WAY, through its managers and supervisors, knew that the SEA WAY workers would be unable to protect themselves against the danger presented by the dangerous and unsafe conditions previously described

6

herein.

38. Notwithstanding the knowledge possessed by the SEA WAY managers and supervisors as described above, SEA WAY did absolutely nothing to remedy the situation and the dangers stemming there from by failing to provide any of the safety devices including a rescue boat, life jackets, safety harnesses, buoys, ropes etc.

39. At all times material and relevant, Mr. Morton's direct supervisors and managers possessed actual knowledge that an injury would follow from Mr. Morton's work in and around the dangerous unguarded take up pulley/ conveyors as a result of the failure to remedy the method of operation.

40. At all times material and relevant, SEA WAY willfully disregarded the knowledge that injury was certain to occur to Mr. Morton or other similarly situated employees and/or agents.

41. Upon all information and belief at various times over the course of the project involving SEA WAY, DIBC was informed of the dangerous aspects in which SEA WAY was performing its duties through direct communications with employees, workers, and through regular inspection.

42. Notwithstanding knowledge of the dangerous aspects of the work being performed by SEA WAY, DIBC continued to operate, control, supervise and allow the unsafe, dangerous work to continue.

43. Upon all information and belief, none of the defendants took any appropriate and required measures to protect employees similarly situated as KENT MORTON from falling from the Ambassador Bridge.

## COUNT I
## LIABILITY AS TO SEA WAY
## PURSUANT TO MCL 418.131(1)

44.     Plaintiff reasserts and realleges each and every allegation set forth in paragraphs one 1 through 43as if fully set forth herein.

45.     At all times material and relevant, SEA WAY had responsibilities for job safety while performing work at the Ambassador Bridge.

46.     At all times material and relevant, it was the statutory duty of SEA WAY to maintain its workplace in a reasonable safe condition, to remedy any seriously hazardous conditions, to avoid exposing its employees and/or agents to known and certain dangers and injuries and to protect its employees.

47.     Under Michigan law, an employer can and will be liable to an employee when the employer subjects the employee to a continuously operative and dangerous condition that the employer knows will cause injury to the employee.  (MCL 418.131(1)).

48.     As the employer and/or entity in possession and control of the subject work site as well as the employees and agents working there, SEA WAY is liable for taking insufficient precautions to protect its employees and/or agents.

49      Upon all information and belief, the injuries sustained by Mr. Morton, as well as his estate, were a result of a deliberate acts of SEA WAY and SEA WAY intended an injury as contemplated under MCL 418.131(1)  The intended injury is satisfied where SEA WAY had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.

50.     Upon all information and belief, Defendant SEA WAY had been cited and/ or violated on multiple occasions by MIOSHA and/ or other regulatory agencies for safety violations.

8

51.     Upon all information and belief, in light of all of these violations, all safety recommendations made by MIOSHA or other regulatory agencies were ignored by Defendant SEA WAY.

52.     At all times material and relevant, SEA WAY, through its supervisors and managers, knew that the safety precautions as previously described should have been implemented after being told to do so after multiple inspections well before Mr. Morton died and failed to immediately remedy the dangerous condition and continued to allow their employees to work in the vicinity of the dangerous condition. The condition was so dangerous that injury was certain to occur to one or more employees.

53.     SEA WAY's knowledge of the defects, hazards and certain injuries likely to flow from the absent safety precautions was based on numerous visual inspections, safety inspections, meetings with safety engineers, prior complaints, prior injuries and MIOSHA violations and warnings.

54.     Notwithstanding said knowledge, SEA WAY did not take reasonable steps to prevent against injuries occurring to KENT MORTON and other similarly situated employees and/or agents. This is true even though SEA WAY managers and/or supervisors knew that injury was certain to occur at some point because the employees and/or agents were being continuously exposed to this hazard of likely serious injury and death. In other words, the managers and supervisors knew that it was only a matter of time before someone would be seriously injured or fatally harmed if the safety precautions were not implemented. Based upon the numerous complaints occurring prior to the subject incident as well as the prior injuries and prior MIOSHA inspections and warnings, SEA WAY supervisors and managers, or all of them, had no doubt that an injury would occur at some point in time.

9

55.    At all times material and relevant, KENT MORTON's supervisors and managers willfully disregarded their knowledge that injury was certain to occur at some point in time unless something was done by SEA WAY to rectify the situation.

56.    Defendant SEA WAY had previous notice of this continually operating dangerous condition by way of accidents and/or injuries to other employees in the same or similar manner, and thus had actual knowledge that an injury was certain to occur, yet willfully disregarded that knowledge.

57.    At all times material and relevant, SEA WAY, to avoid liability should have engaged in the following acts:

a.    It should have had a written policy, enforced the policy and required that all employees working from a raised height such as the Ambassador Bridge be required to wear a safety harness at all times;

b.    It should have required that a rescue boat be available below in the water with an appropriate employee ready to drive the boat to rescue who may fall into the Detroit River including KENT MORTON;

c.    It should have required that life vests/jackets be provided to all employees who are working for a raised structure such as the Ambassador Bridge;

d.    It should have provided safe and adequate means of performing the job by adequately training its employees of safety while working from a raised structure such as the Ambassador Bridge;

e.    It should have provided protection against the dangers associated with working from heights such as the Ambassador Bridge;

f.    It should have properly implemented and not ignored safety recommendations by MIOSHA or other regulatory entities as it pertains to worker safety;

g.    It should have cured all defects related the unsafe conditions then existing prior to allowing KENT MORTON to work in the area from where he fell;

h.    It should have made certain that KENT MORTON and all other employees or agents working with KENT MORTON were properly trained and certified for the functions and/or tasks they were performing.

10

i.    It should have conducted safety inspections and/or safety advisory services in order to prevent such accidents such as the fall of KENT MORTON;

j.    It should have implemented clear, concise and non-contradicting policies and procedures for the employees working at raised heights; and

k.    Failure to properly and carefully installed the decking and/ or scaffolding as well as any wires which failed causing Mr. Morton to fall to his death;

l.    Any and all other breaches of duties learned through the course of continued discovery.

58.    As a result of the failures of the SEA WAY supervisors and managers as described above, KENT MORTON suffered serious and fatal injuries.

59.    As a result of the aforementioned wrongful and tortious acts, KENT MORTON, individually and the Estate of KENT MORTON suffered the following injuries and damages allowable under the Michigan Wrongful Death Statute, MCL 600.2922:

a.    Conscious pain and suffering;

b.    Pre-impact fright and shock;

c.    Severe mental and emotional distress;

d.    Fear of impending doom;

e.    Loss of love, society and companionship suffered by the members of the Estate;

f.    Medical, funeral and burial expenses;

g.    Wage loss and loss of future earning capacity;

h.    Loss of household services ordinarily performed by KENT MORTON prior to his death;

i.    Loss of gifts and gratuities bestowed or to be bestowed upon the members of the Estate;

j.    Loss of parental guidance and counsel; and

k.    All other damages allowable as part of a survival action and/or wrongful death action under MCL 600.2922, the statutes and common law of the

State of Michigan.

**WHEREFORE,** KIMBERLY DOCHERTY and KRISTI WALTSGOTT, as Co-Personal Representatives of the Estate of KENT MORTON, respectfully requests this honorable Court enter Judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $25,000.00 and award costs, interest, attorney fees and exemplary damages so wrongfully incurred.

**COUNT II**
**LIABILITY AS TO DEFENDANT DIBC**
**NEGLIGENCE/ GROSS NEGLIGENCE/ AND AS GENERAL CONTRACTOR/**
**POSSESSOR OF PREMISES**

60.  Plaintiff reasserts and realleges each and every allegation set forth in paragraphs one 1 through 59 as if fully set forth herein.

61.  At all times material and relevant, DIBC hired SEA WAY as a contractor for a project being performed on the AMBASSADOR BRIDGE.

62.  At all times relevant DIBC supervised the job site where SEA WAY and other multiple contractors were performing work.

63.  Specifically, DIBC supervised the area from which KENT MORTON fell.

64.  That Defendant DIBC and their employees took an active role in the supervision, control, direction and administration of the work being performed by the subcontractors working on the Ambassador Bridge.

65.  At all times relevant, KENT MORTON was an employee of SEA WAY working along other workers in a common work area of the project.

66.  Defendant DIBC had multiple responsibilities including preventing avoidable dangers to which a significant number of workers are exposed.

67.  That Defendant DIBC despite its duty of supervision, duty of safety, and

12

duty to provide both a "qualified" a "competent" person, did fail to have either a qualified and/ or competent person at the site of where KENT MORTON fell.

68.    Defendant DIBC, as the general contractor, failed to take reasonable steps within its supervisory and coordinating authority to guard against readily observable and avoidable dangers that created a high degree of risk to a significant number of workers in a common work area.

69.    A significant number of employees had access to the area in question where KENT MORTON fell.

70.    At all times relevant and upon all information and belief, DIBC had responsibilities and had significant control of the ongoing project on its bridge. These responsibilities included, but are not limited to, ensuring the safety of employees and other workers.

71.    At all times material and relevant, DIBC knew that allowing the workers including KENT MORTON, to work without the appropriate and required safety precautions be in place would be certain to cause injury.

72.    Upon all information and belief the injuries sustained by Mr. Morton as well as his estate were a result of Defendant DIBC's failure to act reasonably under the circumstances.

73.    At all times material and relevant, DIBC, through its supervisors and managers, learned of the serious safety risk associated with the manner in which SEA WAY was performing its job duties through several inspections well before Mr. Morton died and failed to immediately remedy the dangerous condition and allowed workers to continue to work in the vicinity of the dangerous condition. The condition was so dangerous that injury was certain to occur to one or more employees.

13

74.     Upon all information and belief, DIBC's knowledge of the defects, hazards and certain injuries likely to flow from the dangers previously described herein were based on numerous visual inspections, safety inspections, meetings with safety engineers, and prior complaints.

75.     Notwithstanding said knowledge, DIBC did not take reasonable steps to guard against injuries occurring to KENT MORTON and other similarly situated workers, employees and/or agents.

76.     At all times material and relevant, supervisors and managers of DIBC willfully disregarded their knowledge of the dangers of the unguarded conveyors and did nothing to rectify the situation.

77.     At all times material and relevant, DIBC, to avoid liability should have engaged in the following acts:

a.      It should have properly exercised control it had over the premises during the project so as to eliminate the serious dangers and health hazards then and there existing relative to the unsafe and extremely dangerous work conditions;

b.      DIBC should have warned workers, employees, agents, including KENT MORTON, of latent and/or hidden dangers of which it knew and/or in the existence of reasonable diligence should have know and it should have abated same;

c.      It should have provided safe and adequate means of performing the job being performed by KENT MORTON and/or all persons working with KENT MORTON at the time of the subject incident;

d.      It should have provided protection against the dangers associated with the failing to ensure that a rescue boat was provided and available, safety harnesses were provided and available, life vests were provided and available, and other safety measures as learned through discovery;

e.      It should have had the appropriate personnel who were properly trained and certified for the process engaged in at the time of the fatal fall suffered by KENT MORTON;

14

f. DIBC had a duty to furnish a competent superintendent and/ or supervisor employed by DIBC with full authority to direct performance of work on the project in accordance with the contract requirements and who is in charge of all construction operations, regardless of who performs the work;

g. DIBC should have to inspected, supervised and controlled the subject construction site so as to discover and eliminate dangerous conditions which could reasonably be foreseen to cause a Plaintiff a substantial risk of injury;

h. It should have abided by or enforce safety rules and regulations as well as federal and state laws applicable to work being conducted at the construction site;

i. It should have established an adequate safety plan and/ or program;

j. It should have made certain that KENT MORTON and all other employees or agents working with KENT MORTON were properly trained, qualified and/ or certified for the functions and/or tasks they were performing.

k. It should have guarded against readily observable and avoidable dangers;

l. DIBC should have conducted safety inspections and/or safety advisory services in order to prevent such accidents;

m. DIBC should have implemented clear, concise and non-contradicting policies and procedures, with respect to safety, while workers are working on the Ambassador Bridge;

n. DIBC should have conducted meaningful safety meetings to inform the workers on proper policies and procedures to be used by persons on the construction site;

o. DIBC should have ensured that the decking and/ or scaffolding as well as the supporting wires were properly and safely installed;

p. Other breaches of duty and/or defects which may be learned through the course of discovery.

78. As a result of the failures of the DIBC supervisors and managers as described above, KENT MORTON suffered serious and fatal injuries.

79. As a result of the aforementioned wrongful and tortious acts, KENT MORTON, individually and the Estate of KENT MORTON suffered the following injuries

and damages allowable under the Michigan Wrongful Death Statute, MCL 600.2922:

    a.    Conscious pain and suffering;

    b.    Pre-impact fright and shock;

    c.    Severe mental and emotional distress;

    d.    Fear of impending doom;

    e.    Loss of love, society and companionship suffered by the members of the Estate;

    f.    Medical, funeral and burial expenses;

    g.    Wage loss and loss of future earning capacity;

    h.    Loss of household services ordinarily performed by KENT MORTON prior to his death;

    i.    Loss of gifts and gratuities bestowed or to be bestowed upon the members of the Estate;

    j.    Loss of parental guidance and counsel; and

    k.    All other damages allowable as part of a survival action and/or wrongful death action under MCL 600.2922, the statutes and common law of the State of Michigan.

**WHEREFORE,** KIMBERLY DOCHERTY and KRISTI WALTSGOTT, as Co-Personal Representatives of the Estate of KENT MORTON, respectfully requests this honorable Court enter Judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $25,000.00 and award costs, interest, attorney fees and exemplary damages so wrongfully incurred.

Respectfully submitted,

FIEGER, FIEGER, KENNEY, GIROUX & DANZIG, P.C.


GEOFFREY N. FIEGER (P30441)
JEFFREY A. DANZIG (P36571)
JAMES J. HARRINGTON, IV (P65351)
Attorney for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555

Dated:   March 28, 2012

17

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**KIMBERLY DOCHERTY and KRISTI WALTSGOTT,**
**as Co-Personal Representatives of the Estate of**
**KENT MORTON, deceased,**

      **Plaintiff,**

                                    **Case No: 12-            NO**

-v-

                                      **Hon:**

**DETROIT INTERNATIONAL BRIDGE COMPANY,**
**A Michigan Corporation,**
**SEA WAY PAINTING COMPANY, INC.,**
**A Michigan Corporation, aka**
**SEA WAY PAINTING, L.L.C.**
**A Michigan Limited Liability Company.**

      **Defendants.**

_____/

GEOFFREY N. FIEGER (P30441)
JEFFREY A. DANZIG (P36571)
JAMES J. HARRINGTON, IV (P65351)
Attorney for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555

_____/

## DEMAND FOR JURY TRIAL

NOW COME the Plaintiffs, KIMBERLY DOCHERTY and KRIST

WALTSGOTT, as Co-Personal Representatives of the Estate of KENT MORTON,

deceased, by and through their attorneys, Fieger, Fieger, Kenney, Giroux & Danzig, P.C.,

and hereby demands a trial by jury of all issues in this cause of action.

Respectfully submitted,

FIEGER, FIEGER, KENNEY, GIROUX & DANZIG, P.C.

GEOFFREY N. FIEGER (P30441)
JEFFREY A. DANZIG (P36571)
JAMES J. HARRINGTON, IV (P65351)
Attorney for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555

Dated:   March 28, 2012

19